STEAGALL, Justice.
Pearson Construction, Inc., sued Steve R. Layton, Janice Layton, and Westlake Auto Sales (collectively referred to as “the Lay-tons”) to enforce a mechanic’s and materi-alman’s lien, claiming that the Laytons owed it $47,910.51 for work done under a construction contract and claiming damages for lost profits. The Laytons counterclaimed, alleging a breach of contract and fraud. A jury returned a verdict for Pearson Construction on its claim, assessing damages in the amount of $65,519.34, and a verdict in favor of Pearson Construction on the counterclaim. The trial court rendered a judgment pursuant to the verdict. Following the denial of their motion for new trial, the Laytons appeal, arguing that the verdict was not supported by the evidence.
A judgment based on a jury verdict is presumed to be correct and will not be reversed unless it is wrong and unjust. Valley Properties, Inc. v. Strahan, 565 So.2d 571 (Ala.1990).
The evidence at trial showed the following: Steve Layton contacted Don Pearson, president of Pearson Construction, about constructing an office building and an automobile lot. After several discussions and visits to the construction site, Pearson proposed to construct a 50- X 75-foot building for approximately $87,000. That price included salvaging the air conditioning/heating unit, windows, doors, and kitchen fixtures from an existing building, razing the existing building, preparing the construction area, constructing the building, and repairing an existing parking area. The Laytons responded by saying that they did not want to spend more than $70,000 on the project. Pearson testified that he told Steve Layton that “we could put in a building for [$70,000] and if you’ll work with us, I believe we can do a great portion of what you’re talking about, let you sell some cars and have a building to use and finish it later.” Pearson further testified that, in order to reduce the cost of the project, the Laytons decided to construct a 50- X 50-foot building instead of a 50- X 75-foot building and to forgo several “extras,” including storefront windows and a block wall at the rear of the building.
Thereafter, Pearson Construction and the Laytons entered into a contract, wherein Pearson Construction agreed to construct the office building and the automobile lot for “an amount not to exceed Seventy Thousand dollars ($70,000.00).” The contract provided that any costs in excess of $70,000 would be negotiated between Pearson Construction and the Laytons, that Pearson Construction would not be expect *5 ed to complete any work in excess of $70,-000, and that any “additional contract or amendment to this contract must be negotiated and agreed upon by owner and contractor before additional work can commence.”
The Laytons were to pay Pearson Construction by four draws at various stages of the project. The Laytons paid the first and second draws. Shortly before submitting the third draw for payment, Pearson Construction informed the Laytons that the project was reaching the $70,000 range and that the Laytons could not expect to complete construction for that amount. When the third draw was submitted, in the amount of $32,288.81, the Laytons refused to pay; Pearson Construction stopped working on the project.
Don Pearson testified that because the Laytons refused to pay the third draw, Pearson Construction was forced to pay the subcontractors and suppliers out of Pearson Construction assets and that, consequently, Pearson Construction’s working, capital was depleted. Pearson further testified that because of the lack of working capital, Pearson Construction was unable to bid on other contracts and, as a result, sustained approximately $450,000 in lost profits.
Pearson testified that as construction of the building and the automobile lot progressed, the Laytons ordered changes and additions that substantially increased the cost of construction and made it impossible to complete the project for $70,000. Danny McRee, a concrete supplier, testified that after he had poured concrete in certain areas, the Laytons ordered changes, saying they “would take care of the additional costs.” Kent Byran, the plumbing subcontractor, testified that plumbing changes required additional labor and material. Steve Waldrop, the electrical subcontractor, testified that there were a number of changes made in the work he was to do, including wiring six extra light poles added by the Laytons. These changes increased construction costs.
Although the parties presented conflicting testimony, the fact issues were for the jury to decide and the trial court charged the jury to that effect. Based on the foregoing,- we conclude that the verdict and the judgment thereon were supported by the evidence and were not wrong or unjust. See Valley Properties, Inc. v. Strahan, supra.
The Laytons also argue that the trial court erred in refusing to allow their expert witness to give his opinion as to which of the parties breached the contract. Assuming, without deciding, that the trial court erred in disallowing this testimony, we conclude that the Laytons’ rights were not injuriously affected and that the error was harmless. Rule 45, A.R.App.P.
The trial court’s judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and INGRAM, JJ., concur.